Argued and submitted September 22, affirmed December 17, 1986

## STATE HEALTH PLANNING
## & DEVELOPMENT AGENCY,
*Petitioner,*

*v.*

## SALEM HOSPITAL,
*Respondent.*

(CA A37628)

730 P2d 589

Richard C. Wasserman, Assistant Attorney General, Salem, argued the cause for petitioner. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Jeff Bennett, Assistant Attorney General, Salem.

Leslie M. Roberts, Portland, argued the cause for respondent. With her on the brief was Josselson, Potter & Roberts, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

The State Health Planning & Development Agency (SHPDA) seeks review of a final order of the Certificate of Need Appeals Board (CNAB) which reversed a previous SHPDA order and approved a certificate of need for respondent Salem Hospital to construct a free-standing psychiatric care unit. ORS 442.340(5)(c); ORS 442.360.[1] SHPDA had found that the hospital could provide psychiatric services of equal quality at less expense by including the facility in its Memorial Unit. We affirm CNAB.

The decisive question is whether the hospital could place the psychiatric care unit in the Memorial Unit and still have sufficient beds for its anticipated 1990 needs. If it could not, the other issues SHPDA raises are irrelevant. CNAB found that the Memorial Unit had a bed capacity of 421 and that the 1990 needs of that facility will be 384 beds. It also found that placing the psychiatric unit in the existing[2] structure would displace a minimum of 48 beds, reducing the hospital's capacity to a number less than its anticipated needs. There is substantial evidence to support these findings if CNAB's view of the legal meaning of "bed capacity" is correct. SHPDA argues that that view is wrong as a matter of law and that the hospital's capacity is actually 18 beds higher. If SHPDA is correct, the hospital could place the psychiatric care facility in the Memorial Unit and still have sufficient beds to meet its anticipated needs. If SHPDA is wrong, CNAB

---

[1] SHPDA is the state agency which passes upon applications for certificates of need. ORS 442.015(32); ORS 442.320. If an applicant is dissatisfied with SHPDA's proposed decision, it may seek an informal hearing before SHPDA makes its final decision. ORS 442.340(5)(a). If it is dissatisfied with the final decision, the applicant may seek a reconsideration hearing before SHPDA, ORS 442.340(5)(b), or it may appeal to CNAB. ORS 442.340(5)(c); ORS 442.360. Both the reconsideration hearing and the appeal are contested cases under ORS chapter 183. ORS 442.340(5)(h). The applicant may either request a reconsideration or appeal, or do both or neither before seeking judicial review. ORS 442.340(5)(g). Because CNAB is independent of SHPDA, SHPDA is a party to an appeal and, as a party, may seek judicial review of CNAB's decision. ORS 183.310(6); ORS 183.480(1); ORS 183.482(1). In this case, SHPDA held an informal hearing, at the hospital's request, before issuing its final decision. The hospital then chose to appeal to CNAB rather than to request a reconsideration hearing before SHPDA or to seek immediate judicial review.

[2] At the time of the hearing the hospital was constructing an addition to the Memorial Unit, with occupancy expected in June, 1986. The parties and CNAB discussed the hospital's bed capacity as it would be with the addition completed, and we will do the same.

did not err in concluding that the hospital could not place the facility in the Memorial Unit. The facility, the need for which SHPDA acknowledges, would then have to be accommodated in a new structure.

At issue are two rooms in the original part of the Memorial Unit and 14 rooms in the recently-constructed portion. *See* n 2, *supra.* Before the recent construction, the two rooms in the older portion were four-bed wards; after construction the hospital converted them to two-bed semi-private rooms. The 14 rooms in the new portion are large enough to meet the standards for semi-private rooms. However, the hospital considers them to be private rooms and did not install the necessary oxygen piping and other equipment for a second bed. SHPDA contends that CNAB should have included the four beds removed when the wards were converted and the 14 beds which could be added by remodeling the new rooms in determining the hospital's bed capacity. The facts are not in dispute; the issue is the application of SHPDA's rules to this situation.

OAR 409-02-015(4)[3] defines "bed capacity" in relevant part as

"the maximum number of in-patient care beds in a facility which can be made readily available for inpatient use in accord with Health Division rules governing inpatient care and long-term care facilities:

"(a) Inpatient beds removed from service to allow conversion of rooms for other than direct inpatient nursing care will not be considered part of 'bed capacity'. Temporary removal of beds from patient rooms for the purpose of cleaning, maintenance, renovation or nonuse is allowable without a change in 'bed capacity.' "

OAR 409-40-010(3) defines "acute inpatient bed capacity" as

"the maximum number of inpatient care beds in a facility which can be made readily available for inpatient use in accord with provisions of state Health Division rules governing inpatient care and long-term care facilities. In the case of hemodialysis facilities, 'bed capacity' means the total number

---

[3] The regulations involved have been renumbered since the hospital submitted its application. There have been no relevant substantive changes. For convenience, we will refer to them by their current numbers.

of hemodialysis stations available, although this capacity is accounted for separately."

SHPDA argues that the phrase "which can be readily made available for inpatient use" indicates that any space in a patient care room which could accommodate a bed under Health Division regulations must be included in the hospital's bed capacity.

SHPDA's argument ignores the definition of "acute inpatient bed" in OAR 409-40-010(2) as

"the space and physical facilities necessary to provide inpatient care to a patient located in a hospital and intended primarily for occupancy by a patient who will be fed, lodged and treated on an overnight basis, except that newborn nursery bassinets, neo-natal intensive care and labor room beds are not included."

Bed capacity is necessarily the total of the number of beds available which meet this definition. For the purposes of this case, the crucial requirements are that there be the "physical facilities necessary" and that the space be "intended primarily for occupancy by a patient." The 14 new rooms do not have the physical facilities for more beds, even if the former wards may have them,[4] and the hospital intends that all the rooms in question be occupied at the lower capacities at which CNAB rated them. The definition does not treat as acute inpatient beds space which would be suitable for that use if remodeled; it requires that the necessary facilities be present now. We need not decide whether the hospital's intent not to use space for which the facilities *are* present would by itself mean that the space should not be counted in the hospital's bed capacity. Here the facilities are not present for at least 14 of the beds which SHPDA would have us include.[5] CNAB did not err in

---

[4] The parties do not direct us to any place in the record which indicates whether the former wards retained the facilities (other than the actual beds) for four beds each, and CNAB made no relevant findings. In any case, SHPDA must show that the 14 new rooms have a legal capacity of two rather than one bed each in order to show that the hospital has sufficient excess capacity (at least 432 acute inpatient beds) to provide space for the psychiatric care unit.

[5] At the time of the hearing the new portion was under construction. There are some indications in the record that the hospital could at that time have redesigned the rooms so that they would have the facilities necessary for two beds each. However, the hospital was not required, nor did it intend, to do so. CNAB correctly evaluated the new portion as it would actually be completed, not as SHPDA wished it would be completed.

concluding that the Memorial Unit does not have the capacity to accommodate the psychiatric care unit.

Affirmed.